1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                    FOR THE EASTERN DISTRICT OF CALIFORNIA

11   WILLIAM GREGORY HAMMOND,

12              Petitioner,                No. CIV S-09-3189 CMK (TEMP) P

13         vs.

14   BOBBY HAASE,

15              Respondent.                ORDER

16   _____/

17              Petitioner is a California parolee proceeding with counsel with a petition for a writ

18   of habeas corpus under 28 U.S.C. § 2254.  On November 15, 2006, petitioner was convicted

19   following a jury trial in Placer County of several offenses related to driving while under the

20   influence of alcohol and driving while his driver's license was suspended.  Petitioner challenges

21   his convictions.

22              On direct appeal, the California Court of Appeal summarized the evidence

23   presented at petitioner's trial as follows:

24              About 1:45 a.m. on May 25, 2006, a white car pulled up to a gas
              pump at an AM/PM gas station located in Roseville.  The station's
25            cashier, Ronald Gilpin, saw the car arrive.  The car was 20 to 30
              yards away but Gilpin could not see the driver.  He saw no activity
26            whatsoever around the car after it pulled up.  Gilpin saw no one get

1

in or out of the car nor did he see anyone pump any gas.  He saw no one and no other cars near the white car.  After 2:00 a.m., Gilpin became concerned when the white car was still parked at the pump.  He thought something might be wrong plus a fuel truck was scheduled to arrive to deliver fuel around 2:00 a.m. or 2:15 a.m. and the white car was in the way.  About 2:15 a.m., the fuel truck arrived.

At 2:24 a.m., Gilpin called 911, reporting that a white car had been sitting at the station for almost one-half hour, something may be wrong with the driver who may be asleep, and that the fuel truck could not deliver fuel.

Roseville Police Officer Brent Northrup went to the station to investigate a reported driver slumped over the wheel.  When he arrived, he saw only one car near the gas pumps at the station and no one else near the car.  The white car was registered to defendant.  Officer Northrup walked up to the driver's window which was all the way up and saw defendant slumped in the driver's seat without a seatbelt and with his head down towards his chest.  The car radio was on and very loud.  The engine and headlights were off but the engine lights on the dashboard were on.  The keys were in the ignition.  Officer Northrup watched defendant breathe for about 30 seconds and then knocked on the driver's window.  Defendant did not respond.  Officer Northrup opened the driver's door and the dome light went on.  Defendant woke up, reached towards the keys in the ignition and pushed the gear shift towards park but it was already in park.  Officer Northrup asked defendant to turn the music down and he did so.  The officer asked defendant to get out and when he did so, he was very unsteady.  Officer Northrup smelled the odor of alcohol on defendant.  Defendant had red, bloodshot and glassy eyes.  When asked, defendant denied having had anything to drink but later said he had been drinking at various places in Sacramento and was going home.  He denied feeling the effects of alcohol.  At first, he claimed he was diabetic and then said he was not.  He also claimed he had neck and back problems but never said the problems would interfere with his performance of the field sobriety tests.  Defendant failed several field sobriety tests and when tested twice with a preliminary alcohol screening device (PAS), his blood alcohol content registered .21 and .22 percent.  Officer Northrup arrested defendant.  An intoxilyzer test at 3:53 a.m. revealed .21 and .22 percent blood alcohol content.  Defendant had a suspended license.

Officer Northrup testified that defendant never claimed that someone else had been driving.

Defendant testified.  He drove to work that day.  When he got off work as an electrician at 3:30 p.m. on May 24, 2006, he went out to dinner with friends.  He then went to the Embers Bar where he

played pool and drank beer from about 5:30 p.m. on May 24 to 12:45 a.m. on May 25, 2006. He denied driving thereafter because he realized he was drunk. Jeff, whose last name defendant did not know, offered to drive defendant home in defendant's car while another man whom defendant did not know offered to follow in a separate car. Defendant accepted. Along the way, the gas light on defendant's car went on. Defendant did not want to get gas in the morning so he told Jeff to stop at a gas station. At the station, Jeff got out, defendant got out and got into the driver's seat and then Jeff left with the other man in the other car. Defendant fell asleep while looking for the phone to call his parents for a ride home.

Defendant claimed he told the officer that he did not know whether he was diabetic but that he might be because his parents were. He told the officer that he had knee and back problems. He said he told the officer he had been drinking. Defendant never told anyone that someone else had been driving nor did he try to find Jeff. Defendant claimed that he told the officer he had not been driving.

Defendant admitted he had previously pled to a charge of failing to stop for an officer, explaining he had been driving his father's car and did not want it towed so he drove to his parents' home. He admitted he had been driving under the influence at the time.

Resp't's Lodged Doc. #3 a t2-5.

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").[1]  It is the habeas

/////

---

[1]  Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief. Fry v. Pliler, 127 S. Ct. 2321, 2326-27 (2007).

1  petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford

2  v. Visciotti, 537 U.S. 19, 25 (2002).

3          The "contrary to" and "unreasonable application" clauses of § 2254(d)(1)  are

4  different.  As the Supreme Court has explained:

> 5      A federal habeas court may issue the writ under the "contrary to"
>        clause if the state court applies a rule different from the governing
> 6      law set forth in our cases, or if it decides a case differently than we
>        have done on a set of materially indistinguishable facts.  The court
> 7      may grant relief under the "unreasonable application" clause if the
>        state court correctly identifies the governing legal principle from our
> 8      decisions but unreasonably applies it to the facts of the particular
>        case.  The focus of the latter inquiry is on whether the state court's
> 9      application of clearly established federal law is objectively
>        unreasonable, and we stressed in Williams [v. Taylor,
> 10     529 U.S. 362 (2000)] that an unreasonable application is different
>        from an incorrect one.

11

12  Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law

13  set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to

14  cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

15          The court will look to the last reasoned state court decision in determining whether

16  the law applied to a particular claim by the state courts was contrary to the law set forth in the

17  cases of the United States Supreme Court or whether an unreasonable application of such law has

18  occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919

19  (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial of a

20  claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must

21  perform an independent review of the record to ascertain whether the state court decision was

22  objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other

23  words, the court assumes the state court applied the correct law, and analyzes whether the decision

24  of the state court was based on an objectively unreasonable application of that law.

25          It is appropriate to look to lower federal court decisions to determine what law has

26  been "clearly established" by the Supreme Court and the reasonableness of a particular application

1    of that law.  "Clearly established" federal law is that determined by the Supreme Court.

2    Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004).  At the same time, it is appropriate to

3    look to lower federal court decisions as persuasive authority in determining what law has been

4    "clearly established" and the reasonableness of a particular application of that law.  Duhaime v.

5    Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003),

6    overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at

7    782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court

8    precedent is misplaced).

9          The claims asserted in this action were presented to California's courts on

10    collateral review.  The only court to issue a reasoned decision with respect to the claims is the

11    Superior Court of Placer County.  Resp't's Lodged Documents #s 8 & 9.

12          Petitioner's first claim is that he was denied his Sixth Amendment right to

13    effective assistance of counsel when his trial counsel failed to argue that testimony from officer

14    Northrup deemed inadmissable hearsay was not in fact admissible as a prior inconsistent

15    statement.

16          The Supreme Court has enunciated the standards for judging ineffective assistance

17    of counsel claims.  See Strickland v. Washington, 466 U.S. 668 (1984).  First, a defendant must

18    show that, considering all the circumstances, counsel's performance fell below an objective

19    standard of reasonableness.  Strickland, 466 U.S. at 688.  To this end, the defendant must identify

20    the acts or omissions that are alleged not to have been the result of reasonable professional

21    judgment.  Id. at 690.  The court must then determine whether in light of all the circumstances, the

22    identified acts or omissions were outside the wide range of professional competent assistance.  Id.

23    Second, a defendant must affirmatively prove prejudice.  Id. at 693.  Prejudice is found where

24    "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

25    proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability

26    sufficient to undermine confidence in the outcome."  Id.

1    As indicated above, Ronald Gilpin testified that at about 1:45 a.m., he observed a

2 white car being parked near a gas pump at the AM/PM where he was working.  RT 70:4-11.

3 During cross examination, Gilpin was asked:  "Did you tell Officer Northrup that you had not

4 seen Mr. Hammond drive the vehicle into the lot?"  RT 75:4-5.  Gilpin responded:  "I said I didn't

5 see anybody driving the vehicle.  I mean, I can't say that it was Mr. Hammond that was driving or

6 not driving."  RT 75:6-8.

7    When Officer Northrup was on the stand, counsel for petitioner asked:  "Mr. Gilpin

8 told you he had not seen the vehicle driving into the parking lot, correct?"  RT 95:14-15.  The

9 prosecution objected to the question as calling for hearsay, counsel for petitioner offered no

10 argument in response and the objection was sustained.  RT 95:16-97:2.  It is not clear how

11 Northrup would have responded to the question because no offer of proof was made nor has

12 petitioner attached an affidavit from Northrup.   In his police report, Officer Northup noted:

13 "GILPIN said that he had not seen the HAMMOND drive his vehicle onto the parking lot . . ."

14 Pet., Ex. A at 4.  At preliminary hearing, Northrup testified "[Gilpin] told me that at

15 approximately 2 a.m. he noticed the defendant's vehicle was in the parking lot and parked at the

16 pumps.  He did not actually see the vehicle drive in or see Mr. Hammond drive the vehicle."  RT

17 18:8-12.

18    The court assumes Northrup would have testified consistent with his preliminary

19 hearing testimony that Gilpin did not see the white car being driven onto the AM/PM lot.  Even

20 so, petitioner has failed to establish he was prejudiced by trial counsel's actions.  While evidence

21 indicating Gilpin did not actually see defendant's car arrive would have bolstered his defense, it

22 would not have bolstered it much or enough to undermine confidence in the jury's verdict.  There

23 is still no corroboration of petitioner's self-serving and implausible testimony that somebody other

24 than petitioner was driving his car when it appeared at the AM/PM and then that person drove

25 away in another car.  Because petitioner has failed to establish he was prejudiced by trial counsel's

26 actions, his first claim must be rejected.

1    Petitioner argues his appellate counsel also deprived him of his right to effective

2  assistance by failing to raise claim one on direct appeal.  However, since petitioner fails to show

3  that claim one has merit, he has failed to show appellate counsel was ineffective for failing to

4  raise it.  See U.S. v. Moore, 921 F.2d 207, 210 (9th Cir. 1990) (appellate counsel not ineffective

5  for failing to argue trial counsel was ineffective where it was found that trial counsel was

6  competent).

7    Petitioner's second claim is that trial counsel was ineffective for failing to offer

8  into evidence the fact that petitioner initially told Officer Northrup that petitioner did not drive his

9  car to the AM/PM–as indicated by Northrup in his incident report (Pet., Ex. A at 3)–despite the

10 fact that during Northrup's testimony Northrup responded "No" when asked "Did [petitioner] ever

11 say to you that someone else had driven him that evening?"  RT 89:10-12.   Whether or not is was

12 reasonable for counsel to forgo this line of questioning is questionable.  However, as with

13 petitioner's first claim, the addition of the evidence described above does not change the balance

14 enough to find counsel Constitutionally ineffective given the strength of the prosecution's case

15 and the lack of corroboration for the essential points of petitioner's defense; the essential points

16 being petitioner did not drive his car to the AM/PM, the car was driven by somebody named

17 "Jeff," there was a car that arrived in conjunction with petitioner's and petitioner passed-out in the

18 driver's seat of his car only after looking for his cell phone.  Furthermore, petitioner does not

19 establish the level of prejudice required even if the court considers the evidence identified in

20 claim one and claim two.

21    Not only do petitioner's claims fail on the merits, but the court is precluded from

22 granting petitioner relief by 28 U.S.C. § 2254(d) because the Superior Court of Placer County's

23 rejection of petitioner's claims (Resp't's Lodged Doc. #9):  1) is not contrary to clearly

24 established federal law as determined by the Supreme Court of the United States; 2) did not

25 involve an unreasonable application of clearly established federal law as determined by the

26 /////

7

1  Supreme Court of the United States; and 3) is not based on an unreasonable determination of the

2  facts in light of the evidence presented.

3          For all the foregoing reasons, petitioner's application for writ of habeas corpus will

4  be denied.

5          Finally, the court notes that, in his traverse, petitioner requests that the court hold

6  an evidentiary hearing concerning whether trial counsel's decision not to elicit testimony from

7  Officer Northrup that petitioner told Northrup petitioner did not drive his car to the AM/PM was

8  an appropriate tactical decision.  Because resolution of this question is not necessary to resolve the

9  claims presented in petitioner's application for writ of habeas corpus there is not cause for an

10  evidentiary hearing.

11          In accordance with the above, IT IS HEREBY ORDERED that:

12          1.  Petitioner's request for an evidentiary hearing is denied;

13          2.  Petitioner's application for writ of habeas corpus is denied;

14          3.  The court declines to issue the certificate of appealability referenced in 28

15  U.S.C. § 2253.

16          4.  This case be closed.

17

18  DATED:  January 12, 2011

19

20  CRAIG M. KELLISON
   UNITED STATES MAGISTRATE JUDGE

21

22  kc
   hamm3189.157

23

24

25

26

8